UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>  vs.<br><br>CLAYTON CHARLES HIGH WOLF,<br>a/k/a CLAYTON CHARLES HIGH<br>WOLFL, JR.,<br><br>               Defendant. | CR. 13-50133-JLV<br><br>ORDER |

      Pending before the court is defendant Clayton High Wolf's oral motion to enforce the plea agreement with the United States and to sustain the defendant's objection to a portion of the presentence investigation report ("PSR"). Mr. High Wolf's motion seeks to prohibit the government from putting on any evidence to support paragraph 20 of the PSR which includes a specific offense characteristic that the defendant possessed a firearm in relation to the offense to which he pled guilty (the "firearm characteristic"). (Docket 79). Pursuant to U.S.S.G. § 2D1.1(b)(1), inclusion of the firearm characteristic adds two levels to the offense level computation. See PSR ¶ 20. The government resists defendant's motion. (Docket 78).

      The government and defendant entered into a plea agreement. (Docket 64). This is a non-binding plea agreement under which the defendant is not allowed to withdraw his guilty plea if the court rejects the parties' sentencing recommendations. Id. at ¶ B; see also Fed. R. Crim. P. 11(c)(1)(A) and (B)

(referenced in paragraph B of the plea agreement). Mr. High Wolf agreed to plead guilty to count 1 of the indictment which charged him with participating in a conspiracy to distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(B). Id. ¶ C.  Upon the court's acceptance of Mr. High Wolf's guilty plea and sentencing, the government agreed to dismiss the remaining count and the forfeiture allegation of the indictment. Id.

On May 22, 2014, Mr. High Wolf appeared before United States Magistrate Judge Veronica L. Duffy for a change of plea hearing. (Docket 70). Following the advisement of rights, Mr. High Wolf entered a plea of guilty to count 1 of the indictment. Id. Magistrate Judge Duffy recommended the court accept Mr. High Wolf's guilty plea and that he be adjudged guilty of the offense of conspiracy to distribute a controlled substance. Id. at p. 2. On June 3, 2014, the court adopted the report and recommendation of the magistrate judge and Mr. High Wolf was "adjudged guilty of conspiracy to distribute a controlled substance as charged in count I of the indictment."  (Docket 73 at p. 1).  A PSR was ordered and a sentencing hearing scheduled. Id. at p. 2.

Senior United States Probation Officer Rick Holloway prepared a PSR dated September 15, 2014, which included the firearm characteristic. "[U.S.S.G.] Section 2D1.1(b)(1) mandates a two-level enhancement if the Government can prove by a preponderance of the evidence that the defendant possessed a dangerous weapon (including a firearm) while violating 21 U.S.C.

§ 841(b)." United States v. Savage, 414 F.3d 964, 966 (8th Cir. 2005) (citing U.S.S.G. § 2D1.1(b)(1); internal quotation marks and other citation omitted).

Mr. High Wolf timely objected to the firearm characteristic and all facts stated in the PSR which supported the firearm enhancement.  See addendum to PSR, objection #1.  For the firearm characteristic to apply over the defendant's objection, the government must prove by a preponderance of the evidence that the firearm was possessed by the defendant, either actually or constructively, and that it is was not "clearly improbable that the weapon was connected to the offense."  United States v. Anderson, 618 F.3d 873, 880 (8th Cir. 2010).  See also Fed. R. Crim. P. 32(i)(3)(B) (the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . .").

Because the firearm characteristic was not included in the plea agreement or the factual basis statement,[1] Mr. High Wolf argues the government is prohibited from presenting evidence in support of the enhancement.[2]  (Docket 79 at p. 3).  Mr. High Wolf asserts the plea agreement was detailed in all respects encompassing the agreement of the parties.  Id.  Mr. High Wolf points out the

---

[1]The factual basis statement limits its content to the base offense level calculation of the PSR.  (Docket 65).  See PSR ¶ 28.

[2]Mr. High Wolf acknowledges the firearm was disclosed in the pretrial discovery produced by the government.  (Docket 79 at p. 3).

plea agreement included stipulations regarding an offense level based on drug quantity, identifying Mr. High Wolf as an average participant in the offense, and regarding a specific adjustment for acceptance of responsibility.  Id.  Mr. High Wolf argues the plea agreement is unambiguous and the government should be bound to its terms.[3]  Id.

    Mr. High Wolf argues by paragraph F of the plea agreement the government agreed to make no sentencing recommendation and is precluded from presenting evidence in support of the firearm enhancement.  Id. at p. 5. He argues "[b]y putting on evidence to support this enhancement the government is in fact [arguing for] a higher sentence then [sic] what would have otherwise been given had [the government] not presented the evidence."  Id.  By his line of reasoning, if the government presents evidence in support of the firearm enhancement, it would be violating paragraph F of the plea agreement.  Id.

    Mr. High Wolf seeks an order requiring specific performance of the terms of the plea agreement.  He argues allowing the government to do otherwise would create a significant and prejudicial consequence to the defendant.  He submits the government should be precluded from presenting evidence on the firearm enhancement because his "detrimental reliance has been great" as he relied on the plea agreement and "sat down with probation and made numerous admissions to the offense to which he pled guilty."  Id.

---

    [3]If the court finds the plea agreement ambiguous, the ambiguities must be "construed against the government."  United States v. Jensen, 423 F.3d 851, 854 (8th Cir. 2005).

The government argues there has been no breach of the terms of the plea agreement.  (Docket 78 at p. 5).  The government asserts "[t]he issue of the application of U.S.S.G § 2D1.1(b)(1) is rarely addressed in drug offense plea agreements in this District."  Id. at p. 4.  The government represents that in only one case in the past four and one-half years has the firearm enhancement been included in the plea agreement.  See United States v. Gossell, CR. 11-50035-02-JLV (D.S.D. 2011) (Docket 75 at ¶ G) ("it is further stipulated that pursuant to U.S.S.G. § 2D 1.1(b)(1), the offense level should be increased by 2, in that the offense involved the possession of a firearm . . . .").

In the only other case identified by the government, the firearm enhancement was specifically excluded.  (Docket 78 at p. 4).  See United States v. Ojeda, CR. 11-50023-02-JLV (D.S.D. 2011) (Docket 99 at ¶ H) ("It is further stipulated between the United States and the Defendant that the offense level should not be adjusted pursuant to U.S.S.G. § 2D1.1(b)(1) in that the Defendant's offense conduct readily provable by the United States does not expose him to an increase in his offense level for possession of a dangerous weapon.").

The government cites to other two cases in which the firearm enhancement was not discussed in the plea agreement, yet the two-level enhancement was included in the defendants' PSRs.  (Docket 78 at pp. 4-5).  In one case, there was no objection and in the other case, the objection to the firearm enhancement was withdrawn.  Id. at p. 5.

The provisions of the plea agreement relevant to the issue before the court are paragraphs F, G, H, K, and P.   Paragraph F provides "[t[he United States and the Defendant agree that the United States will make no recommendation with respect to sentencing in this case.   The United States reserves the right to rebut or clarify matters raised by the Defendant in mitigation of his sentence."

(Docket 64 ¶ F).   Paragraph G states:

> It is understood and stipulated between the United States and the Defendant that the base offense level upon which the Defendant's sentence is to be initially calculated, pursuant to U.S.S.G. § 2D1.1(c))6), is 28, in that the Defendant's offense conduct and relevant conduct readily provable by the United States involved at least 200 grams but less than 350 grams of methamphetamine.  It is further understood that the Defendant will move for, and the United States will not oppose, a two level downward variance based on the 2014 proposed amendments to the Drug Quantity Table.  The Defendant agrees that if he makes a request for a two-level downward variance based on the proposed rules and the Court grants his request, he will not seek a further reduction pursuant to 18 U.S.C. § 3582(c) on the basis of the two-level reduction in the event the two-level reduction is adopted and made retroactive by the Sentencing Commission.  If the Defendant is sentenced after the proposed amendments become effective, it is stipulated that the guideline in effect at the time of sentencing should be used to calculate the base offense level.  The Defendant understands that should the Court not follow the terms of this stipulation and agreement, he will not be allowed to withdraw his plea.

Id. ¶ G.   Paragraph H states:

> It is stipulated between the United States and the Defendant that the offense level should not be adjusted pursuant to U.S.S.G. §§ 3B1.1 or 3B1.2, in that the Defendant's offense conduct readily provable by the United States does not expose him to an increase in his offense level for performing an aggravating role in the offense, nor does his offense conduct qualify him for a reduction in his offense level for performing a mitigating role in the offense. Neither the United States nor the Defendant will offer proof or argument in

6

support of an adjustment for aggravating or mitigating role in the offense at sentencing. The Defendant understands that this stipulation is not binding upon the Court. The Defendant further understands that should the Court not follow the terms of this stipulation and agreement, he will not be allowed to withdraw his plea.

Id. ¶ H.  Paragraph K states: "[t]he United States reserves the right to rebut or clarify matters set forth in the presentence investigation report, or raised by the Defendant in mitigation of his sentence, with evidence and argument."  Id. ¶ K.  Paragraph P in pertinent part states: "[i]t is further understood and agreed that no additional promises, agreements, or conditions have been entered into other than those set forth in this agreement, and this agreement supersedes any earlier or other understanding or agreement."  Id. ¶ P.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971).  "Allowing the government to breach a promise that induced a guilty plea violates due process."  United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir. 2005).  Where a particular provision of the plea agreement includes a reference to a section of the United States Sentencing Guidelines, and the government agrees to not advocate for enhancement under that section, the provision becomes "a bargained-for term of the agreement."  Id. at 1040. "Although not binding on the probation officer or the district court, the plea agreement obligate[s] the prosecutor, at a minimum, to refrain from advocating [for the enhancement]."  Id.  By presenting evidence to establish the

7

enhancement, the government's "conduct constitute[s] a breach of the plea agreement." Id. at 1041.

This case is distinguishable from Thompson, United States v. DeWitt, 366 F.3d 667 (8th Cir. 2004) (plea agreement stipulated to a specific drug quantity and the government breached the plea agreement by proving a greater quantity), and United States v. E.V., 500 F.3d 747 (8th 2007) (plea agreement stipulated to no § 2D1.1(b) enhancements and the government breached the agreement by proving a firearm enhancement). Rather, this case is similar to United States v. Stobaugh, 420 F.3d 796 (8th Cir. 2005). In Stobaugh, the parties acknowledged their base offense level calculations were "only estimates and *do not bind the parties*." Id. at 801 (emphasis in original).

"In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. "A thorough presentence investigation ordinarily is essential in determining the facts relevant to sentencing." Id. at § 6A1.1 (commentary).

Although Mr. High Wolf may have assumed the plea agreement guaranteed him a certain outcome, there is no such promise in the plea agreement. At the change of plea hearing Mr. High Wolf was sworn to tell the truth. (Docket 80 at pp. 2:22-3-1). In response to the magistrate judge's inquiry, Mr. High Wolf indicated the only promises made to him were contained in the plea agreement.

8

Id. at p.12:12-15.  He understood the district court was free to sentence as the court deemed appropriate and was not required to follow the parties' recommendations.  Id. at pp. 13:24-14:13.  In particular, Mr. High Wolf understood the United States Sentencing Guidelines would be used to prepare the PSR and establish a guideline range for imprisonment which could be different from what Mr. High Wolf and counsel discussed.  Id. at pp. 15:15-17:14.  Neither Mr. High Wolf nor counsel gave the magistrate judge any indication they considered the firearm enhancement to be off the table.

If Mr. High Wolf understood the plea agreement to guarantee that the government would not advocate for the firearm enhancement, he should have specifically insisted that language be included.  Stobaugh, 420 F.3d at 801 ("If Stobaugh understood the plea agreement to guarantee that the Government would not advocate for any upward adjustment to the § 2K2.1(a) base offense level for his other relevant conduct, we think this would have been cited as an important benefit.  The parties were free to negotiate a plea agreement under which they were bound to certain stipulations, but in this case they did not.").

Silence on the issue of the firearm enhancement does not make the plea agreement ambiguous.  Because the plea agreement is silent as to the firearm enhancement and the information is not otherwise prohibited by law, the enhancement is information concerning the defendant's conduct which the court may consider.  By presenting evidence in support of the firearm enhancement, the government is not advocating for a particular sentence but rather is only

insuring that the PSR is an accurate reflection of the defendant's conduct.[4] U.S.S.G. § 1B1.4.  Mr. High Wolf's plea agreement allows the government to present evidence to substantiate any enhancements which the United States Probation Office believes may be applicable to the PSR.   By presenting evidence in support of the firearm enhancement, the government does not breach the terms and conditions of the plea agreement.   Thompson, 403 F.3d at 1039. Once the proper guideline range is established, the government is prohibited by paragraph F of the plea agreement from making any sentencing recommendation.

The second issue raised by Mr. High Wolf is critical to the ultimate resolution of how the court must deal with the firearm enhancement under the circumstances of this case.   It was not until the initial sentencing hearing on September 23, 2014, that defense counsel announced she had advised Mr. High Wolf that because the firearm enhancement was not in the plea agreement, he could confidently enter a guilty plea, avoid the enhancement and know the guideline range applicable to the offense of conviction.   This declaration by counsel is contrary to the language of the plea agreement and Mr. High Wolf's statements under oath to the magistrate judge.

---

[4]Mr. High Wolf argues United States v. Heredia, ____ F.3d ____, 2014 WL 5018109 (9th Cir. October 8, 2014), dictates a contrary ruling.   (Docket 84). Heredia involved a binding plea agreement under Rule 11(b)(1)(C) with express language requiring the government "not to 'seek, argue, or *suggest in any way*' that the district court impose a 'sentence other than what has been stipulated to by the parties herein.' "   Id. at 2014 WL 5018109 at *12 (emphasis in original). None of these restrictions are present in Mr. High Wolf's plea agreement.

At the September 23 hearing, counsel argued Mr. High Wolf should be allowed to withdraw his guilty plea.  "If this is how the government is reading [the plea agreement], number one, I think it's a violation; that's my opinion on it. Number two, if it's not [a violation of the plea agreement], I misinformed my client and so he didn't make a knowing, intelligent plea in this matter."  (Docket 82 at p. 6:23-7:2).   If defense counsel's erroneous interpretation of the impact of the plea agreement formed a basis for Mr. High Wolf's guilty plea, counsel's misstatement may constitute ineffective assistance of counsel or at least have impacted defendant's knowing and intelligent waiver of his rights.   Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty . . . the court must . . . determine that the plea is voluntary and did not result from . . . promises (other than promises in a plea agreement)."); Missouri v. Frye, 132 S. Ct. 1399, 1407 (2012) ("The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages."); United States v. De Oliveira, 623 F.3d 593, 596 (8th Cir. 2010) ("Defense counsel's performance can serve as the requisite fair and just reason for withdrawal of a guilty plea . . . if the defendant demonstrates both that his attorney's performance was deficient and that he was prejudiced by it.") (citation and brackets omitted).

To avoid any prejudice to the defendant, the court will allow Mr. High Wolf the opportunity to move to withdraw his guilty plea.   If a motion to withdraw the

guilty plea is filed within fourteen days of the date of this order, the court will grant the motion. At the same time the court will enter an order *in limine* prohibiting the government from using the plea agreement, factual basis statement, any statements made by the defendant during the presentence investigation, and the contents of the PSR in the government's case-in-chief at trial. If a motion to withdraw the guilty plea is not timely filed, the court will set a new date for sentencing consistent with this order.

Accordingly, it is hereby

ORDERED that the defendant's objection #1 to the presentence report is overruled and the oral motion to enforce the plea agreement is denied.

IT IS FURTHER ORDERED that the defendant's motion for specific performance (Docket 79) is denied.

IT IS FURTHER ORDERED that the court will allow Mr. High Wolf to withdraw his guilty plea if a written motion to that effect is filed on or before **January 30, 2015**.

IT IS FURTHER ORDERED that if a motion to withdraw guilty plea is not timely filed the court will set a new date for sentencing.

Dated January 16, 2015.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
 CHIEF JUDGE